CLERK OF THE COURTS  06-018-JJF
UNITED STATES DISTRICT  06-28-07
844 N.KING STREET
WILMINGTON,DELAWARE

## MOTION FOR PLAINTIFF WITHDRAWN

IT IS HEREBY REQUESTED THAT THE PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT PLEASE BE WITHDRAWN. IN LIGHT OF NEW EVIDENCE THE PLAINTIFF DECIDES TO TAKE THIS CASE TO TRIAL.

RESPECTFULLY
H.LEIGHTON LASKEY
527 BALTIC AVE
BROOKLYN,MD 21225

SENT VIA U.S MAIL 6-29-07
BRUCE HERRON



06cv18 JJF
FILED
JUL 10 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

DISGOURRY 

06-018 JJF

## Court sets limits in extracting blood for DWI
Wednesday, November 07, 2001

Recently, in State v. Ravotto (A-45-00), the New Jersey Supreme Court held, based on the specific facts of the case, that the police used "unreasonable force" in obtaining a blood sample from a drunk driving (DWI) arrestee.

The Case: In the middle of January, at about 6 a.m., the police discovered that defendant, Richard Ravotto, was involved in a one-car accident. The car had flipped over and was entangled in a chain-link fence. At the scene, an officer located Ravotto lying in the back of his car. The officer asked Ravotto if he was all right and whether anyone else was in the car. Ravotto replied that he was all right and that he was alone. When an ambulance arrived, however, he said, "Hurry up. Hurry up. There's three of us in here." Then, when he exited his car, Ravotto said, "Ha, ha, I was only kidding."

There was a strong odor of alcohol on Ravotto's breath and, although he appeared disheveled, he had no visible injuries. As a precaution, the police tried to get him onto a backboard so he could be taken to a hospital in the ambulance. Ravotto refused medical treatment, insisting that he was not injured. Believing such treatment was in Ravotto's best interests, the police and other emergency workers forced him onto the backboard and prepared to transport him to a nearby hospital. Ravotto continually and vigorously resisted those efforts. He was then placed under arrest for DWI and transported to the hospital.

Ravotto continued to struggle against the restraints of the backboard on the way to the hospital, and at the hospital, he tried to punch an attending physician who attempted to take his blood pressure.

At the hospital, the police requested that medical personnel take a blood sample from Ravotto. At no time during the hour or so that it took to have a blood kit delivered from police headquarters, did the police offer give Ravotto the opportunity to take a Breathalyzer test. To obtain the blood sample, the police and hospital personnel had to restrain Ravotto. His legs and his left arm were strapped to a table, and several persons, including two police officers, held him down. Ravotto screamed and struggled to free himself as the nurse drew his blood. He said repeatedly, "I'm afraid of needles. I have no problem giving you a Breathalyzer sample if that's what you want but do not take my blood." At court, Ravotto testified that he had felt as though he was "being raped" as the blood was taken. The nurse took eight vials of blood, four for use by the police and four for the hospital's diagnostic purposes. Ravotto was kept in restraints for about six hours after the blood samples were taken, and then discharged. He received no other treatment while at the hospital.

The Law: The law enforcement taking of blood from a suspect constitutes a search under both the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution. With or without a warrant, the police may not use unreasonable force to perform such a search. In "excessive force" cases, the issue will always be whether the officers' actions were, under the circumstances, "objectively reasonable." Courts use a balancing test to determine whether the use of force in a given case is reasonable, giving careful attention to the specific facts of the case, including such factors as (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. The test is an objective one; therefore, an officer's "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

The landmark case governing the extraction of a DWI arrestee's blood is Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826 (1966). In Schmerber, the United States Supreme Court cautioned that compulsory blood tests might not be permissible in all circumstances. Significantly, Schmerber was not a person who "on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'Breathalyzer' test." Moreover, the Schmerber court did not decide whether such wishes of a DWI arrestee would have to be respected. The Court concluded that Schmerber's blood test, performed by a physician in a hospital environment and without the use of force, had been performed in accordance with medically acceptable practices.

Following Schmerber, the New Jersey Supreme Court in State v. Macuk, 57 N.J. 1 (1970), held that a DWI arrestee has "no legal right or choice to refuse" the taking of blood. In this respect, the Court determined that such evidence is "nontestimonial in character," and "may be taken without advice as to the Fifth Amendment privilege against self-incrimination." See also State v. Burns, 159 N.J.Super. 539 (App. Div. 1978) ("consent is not required

to the taking of a blood sample, but the taking of such sample must be done in a medically acceptable manner and environment").

Thereafter, in State v. Woomer, 196 N.J.Super. 583 (App.Div. 1984), the Appellate Division stated that "a subject who resists a blood sample can be restrained in a medically acceptable way as could any other uncooperative patient." Here, in Ravotto, the Supreme Court interpreted that language to mean that "the police properly may draw blood when they gain a suspect's submission by a mild threat of force." But, implicit in the case law, observed the Ravotto Court, "is the notion that at some level of force or coercion the police conduct in pursuit of a blood sample is impermissible." Also, as noted by the United States Supreme Court in Schmerber, "a suspect who objects to a blood test out of fear or who prefers to give a breath sample might be constitutionally entitled to avoid a blood test."

In light of this backdrop of law, the Court in Ravotto held that "the force used by the police to extract Ravotto's blood was unreasonable under the totality of the circumstances." The Court explained:

Defendant was terrified of needles and voiced his strong objection to the procedures used on him. He shouted and flailed as the nurse drew his blood. Several persons, including the police, and mechanical restraints were needed to hold defendant down. Defendant's fear is relevant to our analysis. A suspect's reaction to law enforcement officials is part of the fact pattern.

We also consider the offense that was under investigation as part of the totality of the circumstances. Although [we do] not diminish defendant's suspected offense or in any way condone driving while intoxicated, we note that the charge against defendant is quasi-criminal rather than criminal in nature. Moreover, defendant had been in a one-car accident and was not under suspicion for causing the death of or injury to any other person.

Further, we are guided by the fact that courts do not require proof of blood alcohol levels to convict drunk drivers, and that even without the blood test the police had a strong case against defendant. Defendant had flipped his car, and the police had witnessed his erratic behavior, slurred speech, and glassy eyes, and had smelled alcohol on his breath. In addition, defendant's misleading call for help from the car had evidenced his impaired state.

In applying the constitutional balancing test, the Court considered Ravotto's (1) manifest fear of needles, (2) his violent reaction to the bodily intrusion engendered by the search, and (3) his willingness to take a Breathalyzer test. On the other side of the scale, the Court took into account the State's interest in prosecuting Ravotto on a quasi-criminal charge in respect of which there existed considerable proofs apart from the blood evidence. In striking that balance, the Court held that forced extraction of blood in this case offended the federal and State Constitutions.

The Court also considered the fact that in this case the police made "no effort to offer defendant a Breathalyzer test in lieu of the blood test." The Court said:

Although the police are not obligated to favor one test over the other, their failure to explore the possibility of administering the Breathalyzer test is a factor to be considered in our overall reasonableness inquiry. The record suggests that there was no Breathalyzer available at the hospital, although one was available and in working condition at police headquarters a short distance away. That, in turn, suggests that after the police had secured medical treatment for defendant at the hospital, they might have transported him to police headquarters to administer the Breathalyzer. If defendant's medical condition had precluded him from being transported safely to police headquarters, a mobile Breathalyzer unit may have been available from a nearby police station for use at the hospital. The record reveals no attempt by the police to locate such a unit for that purpose.

In State v. Woomer, the court cautioned that at some point, the level of force use to obtain a blood sample will be impermissible." Here, the New Jersey Supreme Court held that Ravotto's situation presents just such a level. While the Court recognized that "the consent of an accused to an otherwise valid search is not strictly required," in this case, Ravotto "neither consented nor submitted to the drawing of his blood as evidenced by his violent resistance to that action."

Accordingly, the police must not "discount or ignore a defendant's violent reaction to blood extraction." Rather, a DWI arrestee's reaction should be considered as one of the facts that "comprise the totality of the circumstances."

DISCOVERY

06-018 JJF

Clearly, under other circumstances, "some level of force by the police to obtain evidence from obstreperous defendants might be acceptable."

The Court's decision in this case was NOT heavily swayed by Ravotto's offer to submit to a breath test, or on any one factor in the analysis." Rather, its holding was based on the totality of the circumstances, and "the quantum of force used by the police." Also, the Court's holding should not be understood "as suggesting that the police had to acquire a warrant before obtaining a blood sample from defendant or that they acted in an unreasonable manner in seeking treatment for him at the hospital. Because defendant's car was found overturned and his behavior demonstrated obvious signs of intoxication, probable cause existed for the police to seek evidence of defendant's blood alcohol content level. In addition, the dissipating nature of the alcohol content in defendant's blood presented an exigency that required prompt action by the police. Under those conditions, a warrantless search was justified.

During the course of its decision, the Court pointed out that the constitutional right to be free of unreasonable searches does not turn solely on whether a defendant objects to police conduct or resists an otherwise legitimate law enforcement action. To the contrary, the same or even greater level of force than was used here could be reasonable in a different setting. In this respect, the Court emphasized that the reasonableness inquiry is fact sensitive and offers no sure outcomes in future cases. As this case demonstrates, the quantum of force used by the police, although significant to the analysis, is not the sole factor to be considered.

The Court was also satisfied that its holding should not "hamper the ability of the police to bring intoxicated motorists to justice." The Court said:

First, as noted, blood or breath testing is not always critical to the State's case. Second, we leave undisturbed the ability of the police to use all reasonable investigative techniques normally at their disposal to obtain blood samples or other proofs necessary for their work. Third, our sense from the record is that this case, with its unique facts and circumstances, is not likely to be replicated with any regularity.

In sum, the police had probable cause to arrest defendant, and due to exigency, they were not required to obtain a search warrant authorizing the blood sample. Moreover, the police acted properly in transporting defendant to a hospital and seeking the blood test in a medically reasonable manner. The Court concluded, however, that the police used unreasonable force to acquire the blood sample from defendant against whom they already had considerable evidence. On that basis, the blood-test results must be suppressed.

*Leighton Jaskey*

7-2-07

W. CASEY
527 BALTIC AVE
BROOKLYN, MD 21225

BALTIMORE MD 212
03 JUL 2007 PM 5 T

CLERK OF THE COURTS
UNITED STATES DISTRICT
844 N. KING STREET
LOCKBOX 18
WILMINGTON, DELAWARE, 19801