IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| H. LEIGHTON LASKEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-18-JJF |
| | : | |
| PFC. ROBERT C. LEGATES, | : | |
| PFC. WHEATLEY, MILLSBORO | : | |
| POLICE DEPARTMENT AND TOWN OF | : | |
| MILLBORO, | : | |
| | : | |
| Defendant. | : | |

H. Leighton Laskey, Pro Se Plaintiff.

Bruce C. Herron, Esquire, AKIN & HERRON, P.A., Wilmington, Delaware.
Attorney for Defendant.

**MEMORANDUM OPINION**

October 19, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are Plaintiff's Motion for Summary Judgment (D.I. 44), and Defendants' Motion For Summary Judgment (D.I. 56). For the reasons discussed, the Court will grant Defendants' Motion.

I.  **NATURE AND STATE OF THE PROCEEDING**

On January 6, 2006, H. Leighton Laskey ("Mr. Laskey") filed his initial complaint (D.I. 2), naming as defendants Millsboro Police Officer Robert Legates ("Officer Legates"), Millsboro Police Officer Barry Wheatley ("Officer Wheatley"), "Supervisor of Duty John Doe at time of the alleged incident," Governor Ruth Ann Miner, and the State of Delaware, alleging that Officers Legates and Wheatley used unnecessary force during the course of his arrest on January 3, 2004. Pursuant to 28 U.S.C. § 1918, the Court dismissed the claims against Governor Miner, the State of Delaware and "Supervisor of Duty John Doe at time of the alleged incident." On July 31, 2006, Mr. Laskey filed an Amended Complaint (D.I. 25), adding as defendants the Town of Millsboro and the Millsboro Police Department, alleging that the Millsboro Police Department "directs police to violate civil law and use unreasonable and excessive force to obtain evidence."

On April 9, 2007, Mr. Laskey filed a Motion for Judgment on the Pleadings (D.I. 44). His motion was fully briefed on June 22, 2007, but Mr. Laskey withdrew his motion on July 10, 2007,

1

because, "in light of new evidence[,] the Plaintiff decides to take this case to trial." (D.I. 54.)

On July 19, 2007, Defendants filed a motion for Summary Judgment (D.I. 56). This motion was fully briefed on August 27, 2007, but Mr. Laskey filed additional papers in opposition on September 4, 2007 (D.I. 62).

On October 9, 2007, Mr. Laskey submitted a Request to Proceed in Absentia (D.I. 65), because he has incurred financial difficulty since he filed the case. According to Mr. Laskey's letter, he "has obtained all evidence [he] could financially," and would like the Court to decide the case based on the evidence he has thus far presented. Mr. Laskey has requested that the Court disregard his July 10, 2007 withdrawal of his motion for summary judgment, and, should the Court find in favor of Mr. Laskey, grant this motion.

## II. BACKGROUND

On January 3, 2004, Mr. Laskey was arrested in Sussex County, Delaware, by Officer Legates for suspicion of Driving Under the Influence of Alcohol, after failing several field sobriety tests. Mr. Laskey was taken to Delaware State Police Troop 4 in Georgetown, Delaware by Officer Legates, where he was asked to submit to a breath test to measure his blood alcohol level. Mr. Laskey refused. Officer Legates informed Mr. Laskey that he would be transported to Beebe Hospital in Lewes, so that

a blood alcohol reading could be obtained through a blood draw. Officer Legates did not inform Mr. Laskey of the penalty for refusing to consent to chemical testing. Mr. Laskey alleges that he refused to consent to the blood draw, and asked to speak to an attorney.

En route to the hospital, Mr. Laskey told Officer Legates, "You better get the big boys because there is no way you are getting blood from [me/my arm]." Officer Legates called Officer Wheatley, and requested he respond to Beebe Hospital.

Officer Wheatley met Officer Legates at Officer Legates' police vehicle near the emergency room entrance. Officer Wheatley opened the rear passenger door, and saw Mr. Laskey sitting in the back seat, with his hands cuffed behind his back. Officer Wheatley asked Mr. Laskey to exit the vehicle. The parties' interpretations of the events that followed differ significantly.

A.   Mr. Laskey's Allegations

According to Mr. Laskey, he refused to exit the vehicle, and said, "What are you going to do? Pull me out of the vehicle?" Mr. Laskey alleges that Officer Wheatley pulled him out of the vehicle and threw him to the pavement. Because Mr. Laskey was in hand cuffs, he was unable to support himself, and landed face-first on the pavement, resulting in a bleeding injury to his nose.

3

Mr. Laskey further alleges he was then grabbed by both officers, placed over the trunk of the police vehicle, and fearing for his safety, "started to resist the officers." (D.I. at 1.) Mr. Laskey continued to resist as he was carried into the hospital, and held down as blood was forcefully and involuntarily drawn from him. Mr. Laskey alleges that he "accidently wiped blood from [his] nose onto [Beebe hospital nurse Carey] Rutherford," ("Nurse Rutherford") as a result of his resistence. Following the blood draw, Mr. Laskey refused to exit the hospital and was carried out.

B.  Defendants' Allegations

Defendants allege that Mr. Laskey exited the vehicle willingly, and that "Officer Wheatley may have touched Laskey's arm to guide him," but that otherwise there was no physical contact between Officer Wheatley and Mr. Laskey at this point. (D.I. at 9.)

Defendants allege that Mr. Laskey was instructed to stand facing the rear of the car, and lean over the trunk. As Officer Wheatley attempted to place leg shackles on Mr. Laskey's legs, Mr. Laskey stood up straight. At this point, two officers from the Lewes Police Department ("Lewes Officers") were present on the scene. Officer Wheatley asked the Lewes Officers for assistance, and continued his attempts to shackle Mr. Laskey's legs. Mr. Laskey kicked Officer Wheatley in the stomach, at

4

which point the Lewes Officers grabbed Mr. Laskey's arm and upper torso and placed him on the trunk of the car. Defendants allege that Mr. Laskey then struck his nose on the trunk.

After Officer Wheatley was kicked in the stomach, Officer Legates assisted Officer Wheatley in shackling Mr. Laskey's legs. Officer Wheatley and the Lewes Officers carried Mr. Laskey into the hospital, placed him in a bed, and noticed that Mr. Laskey was bleeding from a cut on his nose. Defendants allege that Mr. Laskey swore at hospital personnel, and deliberately wiped blood from his nose onto Nurse Rutherford's arm. In order to prevent further assaults or offensive contact with hospital personnel, Officer Wheatley and the Lewes Officers held Mr. Laskey's arms and legs down. Defendants allege that Mr. Laskey did not physically resist when hospital personnel actually withdrew blood from his arm.

Officer Legates asked Mr. Laskey if he wanted medical attention for the cut on his nose, to which Mr. Laskey responded, "Shut up." Mr. Laskey was transported to the Millsboro Police Department, where Officer Legates again asked Mr. Laskey if he wanted medical treatment for his nose. Mr. Laskey again declined.

## II. PARTIES' CONTENTIONS

### A. Defendants' Motion for Summary Judgment

By their Motion, Defendants contend that they are entitled to summary judgment as a matter of law because Officers Legates

5

and Wheatley did not use excessive force to obtain Mr. Laskey's blood sample during the course of his arrest for driving under the influence, and, in the alternative, Officers Legates and Wheatley are protected from liability by the doctrine of qualified immunity.

Defendants Town of Millsboro and the Millsboro Police Department contend they are entitled to summary judgment because there is no evidence that Mr. Laskey's alleged injury was caused by a municipal custom or policy.

B.   Plaintiff's Motion for Summary Judgment

By his Motion, Mr. Laskey contends that he is entitled to summary judgment as a matter of law because Officers Legates and Wheatley used excessive force to obtain Mr. Laskey's blood sample during the course of his arrest for driving under the influence, resulting in injury to Mr. Laskey.  Mr. Laskey further contends that the Town of Millsboro and the Millsboro Police Department direct police officers to use physical force to obtain evidence.

## III. LEGAL STANDARD

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to

6

judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted). However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary

judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## IV. DISCUSSION

A. Whether Defendants Officers Legates and Wheatley Are Entitled to Summary Judgment Because They Did Not Use Excessive Force to Obtain Mr. Laskey's Blood Sample During the Course of his Arrest

Under Delaware law, a person suspected of driving under the influence may only refuse chemical testing if a police officer first informs him that he may lose his license for a year if he withholds consent. McCann v. Delaware, 588 A.2d 1100, 1101 (Del.1991) (citing Del.Code Ann. tit. 21, § 2742(a)); see also Del.Code Ann. tit. 21, § 2740 (police may administer test if they have probable cause to suspect a person is intoxicated within the meaning of the statutes). The effect of the foregoing law is that an officer has the ability to require a suspect to submit to testing, without that person's consent or a reading of the implied consent law, so long as the officer has probable cause and the degree of force used is not excessive under the Fourth Amendment. Seth v. Delaware, 592 A.2d 436, 444 (Del.1991) (citations omitted). It is undisputed that Mr. Laskey was not informed of the penalty for refusing to consent to chemical testing. Thus, at issue is whether Officers Legates and Wheatley

8

used excessive force in procuring the blood draw.

When evaluating excessive force claims under the Fourth Amendment, the proper inquiry is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the officer's motivation. Graham v Connor, 490 US 386, 397 (1989). Among the factors to be considered in assessing whether the use of force was reasonable are the severity of the crime at issue, whether the plaintiff posed an immediate threat to the police officer or others, whether the plaintiff actively resisted arrest, and whether the plaintiff attempted to evade arrest by fleeing. Id. at 396.

An inquiry into reasonableness requires careful attention to the circumstances of the police action, which are frequently uncertain, and rapidly evolving. Id.; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). The reasonableness of the force used by Officers Legates and Wheatley is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

As depicted *supra*, the parties' interpretations of the events that followed Officer Legates and Mr. Laskey's arrival at Beebe Hospital differ significantly. Even if the Court accepts all of Mr. Laskey's allegations as true, Mr. Laskey's evidence does not support a finding that the amount of force used by

9

Officers Legates and Wheatley was unreasonable given Mr. Laskey's conduct. Officers Legates and Wheatley were confronted with an uncooperative arrestee who appeared intoxicated, and who indicated to Officer Legates that he intended to forcefully resist a blood draw. (D.I. 61.) Mr. Laskey further admits that he did forcefully resist the blood draw. (D.I. 50.) When Mr. Laskey was actively resisting the blood draw, he exerted enough strength to require three to four police officers to subdue him. (Legates Aff. ¶¶ 8-10; Wheatley Aff. ¶¶ 5-7.)

Mr. Laskey has failed to meet his burden of proving that a material fact exists as to whether the amount of force used was unreasonable in light of the facts and circumstances confronting the officers. See Davis v. Bishop, No. 05-583, 2006 WL 2801872, at *5 (D.Del. Sept. 29, 2006) (finding that, where defendant police officer flung plaintiff off the hood of police car, forcibly cuffed and manhandled him, a jury would conclude that force used by defendant was reasonable given the conduct of the plaintiff). Accordingly, the Court will grant Officer Legates and Officer Wheatley's Motion for Summary Judgment.[1]

  B.  Whether Defendants Town of Millsboro and Millsboro Police Department Are Entitled to Summary Judgment

When a suit against a municipality is based on § 1983, the

---

[1] Although Officers Legates and Wheatley may be entitled to qualified immunity, in view of the Court's decision on Summary Judgment, the Court will not address the qualified immunity issue.

10

municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).

Mr. Laskey contends that "the Town of Millsboro and the Millsboro Police are responsible for the actions of their officers in the line of the officer's duties." (D.I. 62.) However, "[it] is an established principle that the doctrine of respondeat superior is not an acceptable basis for liability under 42 U.S.C. § 1983." Moody v. Kearney, 380 F.Supp.2d 393, 398 (D.Del., 2005)(citing to Monell, 436 U.S. 658 (1978). Further, Mr. Laskey has presented no factual evidence tending to support his allegation that the Town of Millsboro and the Millsboro Police Department have a policy that "directs police to violate civil law and use unreasonable and excessive force to obtain evidence." (D.I. 25.) Therefore, the Court concludes that Defendants Town of Millsboro and Millsboro Police Department are entitled to summary judgment on Mr. Laskey's Section 1983 claims.

## VI. CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion For Summary Judgment (D.I. 56).

An appropriate Order will be entered.

11